# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-976


RONNIE MYERS

VERSUS

ACADIA PARISH POLICE JURY, ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2012-11227
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and John E. Conery, Judges.


**AFFIRMED.**

**Jeffery F. Speer**
**George A. Wright**
**Doucet- Speer, APLC**
**Post Office Drawer 4303**
**Lafayette, Louisiana  70502-4303**
**(337) 232-0405**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Ronnie Myers**

**James D. "Buddy" Caldwell**
**Attorney General**
**Carol S. Hunter**
**Assistant Attorney General**
**Louisiana Department of Justice Litigation Division**
**556 Jefferson Street, 4th Floor**
**Lafayette, Louisiana  70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **State of Louisiana, DOTD**

**F. Douglas Wimberly**
**Cloyd, Wimberly & Villemarette, L.L.C.**
**Post Office Box 53951**
**Lafayette, Louisiana  70505-3951**
**(337) 289-6906**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Acadia Parish Police Jury**

**CONERY, Judge.**

Plaintiff, Ronnie Myers, filed suit on December 11, 2012, against the Acadia Parish Police Jury (APPJ) and the State of Louisiana through the Department of Transportation and Development (DOTD) to recover both personal injury and property damages he allegedly sustained when his vehicle ran through the intersection of Charlene Road and Prudhomme Road (Louisiana Highway 95) in Acadia Parish and into the ditch adjoining Prudhomme Road. Mr. Myers claimed that as he was driving on Charlene Road approaching the stop sign controlling traffic on Charlene Road, there was a heavy fog impairing visibility. He alleged that the stop sign was twisted and/or down, and thus, he had no warning of the intersection. He claimed that APPJ and DOTD were liable as custodians of the defective stop sign. Following a hearing, the trial court granted summary judgment in favor of APPJ and DOTD, dismissing Mr. Myers's petition with prejudice at his cost. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Mr. Myers claimed that in the early morning hours of December 16, 2011, he was driving his vehicle north on Charlene Road. It is undisputed that Mr. Myers was driving in a heavy fog. Mr. Myers claimed that he was unfamiliar with Charlene Road, and did not know that it came to a "T" intersection with Prudhomme Road, which required him to stop and turn left or right.

At the time of the accident, the stop sign, which would have normally faced Charlene Road and would have presumably warned Mr. Myers of the intersection and the need to stop his vehicle, was twisted and/or down such that he could not

see it. Mr. Myers then drove his vehicle across Prudhomme Road and into the adjoining ditch, allegedly causing his injuries and property damages.

Mr. Myers timely filed suit against both APPJ and DOTD seeking both personal injury and property damages, claiming that each failed in its duty to properly maintain the stop sign at the intersection. Both defendants filed motions for summary judgment in the fall of 2014, almost three years after the accident in question. After the hearing held on January 12, 2015, the trial court, for oral reasons stated on the record, found that APPJ did not have custody and control of the stop sign and had no notice of the stop sign's defect, and dismissed APPJ with prejudice. The trial court found that while DOTD did have custody and control of the stop sign and was responsible for its proper maintenance, DOTD did not have proper notice of any alleged problem with the stop sign, and also dismissed DOTD from the lawsuit with prejudice, assessing all costs to Mr. Myers.

Mr. Myers timely appealed the trial court's judgment dismissing the two defendants, with prejudice, arguing the trial court erred in granting summary judgment to both APPJ and DOTD. Mr. Myers also claims in the alternative that he was not allowed to complete the necessary discovery to oppose the motions for summary judgment filed on behalf of APPJ and DOTD.

## LAW AND DISCUSSION

### *Standard of Review*

Summary judgments are reviewed de novo, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Louisiana Code of Civil Procedure

Article 966 governs the procedure for the trial court to grant a summary judgment.[1] Summary judgment may be sought by a plaintiff at any time after an answer has been filed. La.Code Civ.P. art. 966(A)(1). A motion for summary judgment by the defendant may be made at any time. *Id.* Summary judgment is favored by the law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court shall grant the summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

Louisiana Code of Civil Procedure Article 966(F)(2) requires that the trial court only consider "evidence admitted for purposes of the motion for summary judgment." This includes "[e]vidence cited in and attached to the motion for summary judgment or memorandum filed by an adverse party[.]" La.Code Civ.P art. 966(F)(2). All of the documents considered by the trial court in this case were properly attached to the memorandum submitted in support of and in opposition to the motions for summary judgment.

"When a motion for summary judgment is made and supported . . . an adverse party may not rest on the allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.P. art. 967(B). A fact is material when its existence or nonexistence

_____

[1] Louisiana Code of Civil Procedure Article 966 was amended effective January 1, 2016. However, this case was filed and the motions for summary judgment were heard prior to the effective date of the amendment and therefore the former version of La.Code Civ.P. art. 966 is applicable.

may be essential to a plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *S. La. Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writs denied*, 596 So.2d 211 (La.1992). In other words, a "material" fact is one that would matter on the trial on the merits. "Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Smith*, 639 So.2d at 751.

### *Applicable Law*

In determining whether a fact is material, we must consider the substantive law governing the litigation, which in this case would include La.Civ.Code arts. 2315, 2317, and 2317.1 and La.R.S. 9:2800, all of which specifically apply to public entities such as APPJ and DOTD.

Louisiana Civil Code Article 2315 provides, in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

Louisiana Civil Code Article 2317 provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

Louisiana Civil Code Article 2317.1 further provides, in pertinent part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could

4

have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Louisiana Revised Statutes 9:2800 limits the liability of a public body, providing, in pertinent part:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> . . . .
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
>
> D. Constructive notice shall mean the existence of facts which infer actual knowledge.

No matter which theory of recovery is claimed by a plaintiff against a public entity, such as APPJ and DOTD, the legal analysis is well settled that a plaintiff must establish:

> (1) [defendant] had custody of the thing that caused the plaintiff's injuries or damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) [defendant] had actual or constructive knowledge of the defect and did not take corrective measures within a reasonable time; and (4) the defect in the thing was a cause-in-fact of the plaintiff's injuries.

*Hunter v. Lafayette Consol. Gov't*, 15-401, p. 4 (La.App. 3 Cir. 11/4/15), 177 So.3d 815, 819-20 (citing *Davis v. State ex rel. Dep't.of Transp. & Dev.*, 11-625, p. 9 (La.App. 3 Cir. 11/2/11), 78 So.3d 190, 196, *writ denied*, 11-2681 (La. 2/10/12), 80 So.3d 488.

5

***Acadia Parish Police Jury – Necessary Custody of the Stop Sign and Notice of Defect***

In support of its motion for summary judgment, APPJ submitted the affidavit of Michael Schexnayder, Road Manager for APPJ, which established that the custody and control of the stop sign at issue was the responsibility of DOTD. Mr. Schexnayder's sworn affidavit that the stop sign was in the custody and control of DOTD was reinforced by Chris Lissard, Assistant District Administrator for Operations for DOTD District 03, who also swore in his affidavit that DOTD had custody and control of the stop sign.

Though he filed an appeal of the trial court's judgment dismissing APPJ from the litigation, in his brief to this court Mr. Myers states that "only Acadia Parish should have been dismissed on Summary Judgment," as he is unable to dispute that APPJ did not have the required "custody and control" of the stop sign which allegedly caused his damages. In addition to this judicial admission, this court agrees that Mr. Myers was unable to meet the first of the four elements necessary to prove his claims against the APPJ at trial and we affirm the summary judgment granted by the trial court on behalf of APPJ.

***Department of Transportation and Development - Actual Or Constructive Notice Of The Defect***

At the hearing held on January 11, 2015, the trial court granted summary judgment in favor of DOTD based on the failure of Mr. Myers to prove that DOTD had actual or constructive notice of the defect in the stop sign. The affidavit of Mr. Lissard, the Assistant District Administrator for Operations for DOTD District 03, stated that he oversees the maintenance of state highways in his district, including

Prudhomme Road (Louisiana Highway 95). In his affidavit, Mr. Lissard also swore that he had conducted a review of the DOTD records for the period beginning December 16, 2010, and continuing through December 16, 2011. His review revealed DOTD had no prior notice of a turned or downed stop sign on Highway 95 (Prudhomme Road) until 3:00 a.m. on the morning of December 16, 2011, subsequent to Mr. Myers's accident.

Also attached as an exhibit to Mr. Lissard's affidavit was a DOTD Work Request Report # 5845, which indicated that on December 16, 2010, at 3:00 a.m., an individual named "Mary," with the Police Department, reported there was a "STOP SIGN DOWN" at Highway 95 (Prudhomme Road) and the intersection with Charlene Road.

In further support of its motion, DOTD submitted a portion of the deposition of Jean Pierre Comeaux, a now retired member of the Acadia Parish Sheriff's Office, who investigated Mr. Myers's accident on December 16, 2011. Mr. Comeaux prepared the crash report for the accident and testified that he got the call reporting an accident at the intersection of Charlene Road and Prudhomme Road around 2:16 a.m. and arrived at the scene at 2:31 a.m. by way of Charlene Road. Due to the foggy conditions, he took "the easiest, closest way I could."

Mr. Comeaux described the intersection of Prudhomme Road and Charlene Road as a "curved T intersection." He also noted that when he approached the intersection, the stop sign was completely turned around and facing Prudhomme Road, and not properly facing Charlene Road. Mr. Comeaux also testified that the stop sign was still standing and not lying on the ground, but twisted the wrong way. Mr. Comeaux testified that Mr. Kent Miller, the property owner who lived across the road, came to the accident scene and did not mention anything about any

7

prior problems with the stop sign while at the accident scene.  Mr. Comeaux also testified that an unidentified State Trooper came to the scene, but left shortly after he allegedly claimed that the Acadia Parish Sheriff's Office had jurisdiction to investigate the accident and prepare the accident report.

When directly questioned whether he had any information about how long the stop sign had been turned and facing the wrong way, Mr. Comeaux replied:

A    No, I didn't.  That was my zone, and I went that way pretty regular, and I didn't notice it until that night.  And I called dispatch and told them so they could have it fixed.

Q    So back around the time of this crash in, say, December of 2011, you routinely or regularly patrolled the area that includes the intersection at issue?

A    Yes.

Q    About how often do you think you would drive through that intersection say during a week or --

A    Couple -- two or three times a week, at least.

Q    If you had seen the stop sign had been turned or not in its proper position, would you have reported it to someone?

A    Yeah, I sure would have.

Q    And to your recollection, you had never noticed anything wrong with the stop sign before Mr. Myers's crash?

A    No, I didn't.

Q    Were there any other markings or signings for Mr. Myers's path of travel other than the stop sign?

A    No.  He went straight across.  He didn't even have any skid marks until he got to the ditch.

The deposition testimony of Mr. Comeaux and his report to his dispatcher that the stop sign needed repair coincides with the DOTD Work Request Report # 5845 attached to Mr. Lissard's affidavit and received by DOTD on December 16,

2010, at 3:00 a.m., which put DOTD on notice that the stop sign needed repair only after the accident in question.

Finally, DOTD submitted a portion of the deposition of Mr. Myers, who testified he did not see the stop sign prior to the accident. After the accident, however, Mr. Myers claimed that the stop sign was "laying down across the highway," and the sheriff's deputy and state trooper "were trying to get it to stand back up." Whether the stop sign was down or twisted/and or bent in the wrong direction, it is undisputed that the stop sign could not have provided the necessary warning for Mr. Myers to stop his vehicle and potentially avoid the accident. The only relevant question presented to the trial court on summary judgment as to DOTD was whether DOTD had adequate notice that there was a problem with the stop sign.

Louisiana Code of Civil Procedure Article 967(B) provides:

When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

Once DOTD made its prima facie showing that its motion for summary judgment should be granted based on lack of notice, the burden then shifted to Mr. Myers pursuant to La.Code Civ.P. art. 966(C)(2). Once the burden of proof has shifted, as in this case, "if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no issue of material fact." La.Code Civ.P. art. 966(C)(2). "[T]he failure of the non-moving party to produce evidence of a material factual dispute

9

mandates the granting of the motion." *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533, p. 7 (La. 2/20/04), 866 So.2d 228, 233.

In opposition to DOTD's motion, Mr. Myers submitted the affidavit of Kent Miller, the property owner who came to the scene of the accident from his home across the road. In his affidavit, Mr. Miller attests in pertinent part:

> The stop sign at said intersection was bent, twisted and/or otherwise down at the time of the aforesaid accident. I have resided at the aforesaid residence for over twenty two years and I am aware of several other accidents that have occurred at the same intersection (Charlene Rd and Prudhomme Rd/Hwy 95) due to the same aforestated conditions to the stop sign prior to December 16, 2011.

DOTD objected to the affidavit of Mr. Miller, both in the trial court and in its brief on appeal. DOTD's objection is based on the failure of the affidavit to meet the requirements of La.Code Civ.P. art 967(A), which states in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Mr. Miller's affidavit concerning the defective condition of the stop sign does not differ from the affidavits and testimony offered by DOTD in support of its motion for summary judgment, as all parties agree the sign was either bent, twisted the wrong way, or down. Any of these defects would render the stop sign useless to Mr. Myers when he approached the intersection of Charlene Road and Highway 95 and thus does not create a genuine issue for trial as to the question of the defective condition of the stop sign. La.Code Civ.P art. 967(B).

As to the "notice" element, Mr. Miller further attests in his affidavit that he has lived in his home for over twenty-two years. During this time period he was aware of other accidents at the intersection that were "due to the same aforestated

10

conditions to the stop sign prior to December 16, 2011." DOTD objected at trial and on appeal that Mr. Miller's affidavit as to the notice issue "fails to meet the threshold for the law relating to the admissibility of other accident evidence." This court agrees.

The basis of the trial court's finding in favor of DOTD was the issue of lack of notice of the defect, i.e. the stop sign, which was either down or twisted. Although the trial court did not specifically rule on DOTD's objection to Mr. Miller's affidavit, by granting DOTD's motion for summary judgment, it appears the trial court implicitly found that the affidavit did not create a genuine issue of material fact on the issue of notice. Mr. Miller's vague statements that there have been other accidents at the intersection over the twenty-two year period that he has lived in the area were not sufficient to create a genuine issue of material fact that would preclude summary judgment in favor of DOTD on the issue of notice.

Louisiana Revised Statute 9:2800(D) states: "Constructive notice shall mean the existence of facts which infer actual knowledge." Thus, "[a] public entity is deemed to have constructive notice if the defect existed for such a period of time that it should reasonably have discovered it." *Fisher v. Catahoula Parish Police Jury*, 14-1034, p. 4 (La.App. 3 Cir. 4/29/15), 165 So.3d 321, 324, *writ denied*, 15-1402 (La. 10/2/15), 178 So.3d 993. The affidavit of Mr. Miller does not create a genuine issue of material fact on the issue of "constructive notice." Although it demonstrates that there may have been other accidents at the intersection in the past, it fails to state that Mr. Miller personally observed the condition of the stop sign in a time period preceding Mr. Myers accident such that DOTD "should reasonably have discovered it." *Hunter*, 166 So.3d at 820.

11

Mr. Myers offered no other factual support or documentation to contradict the affidavit presented by DOTD that it had no notice of a problem with the stop sign at the intersection of Prudhomme Road and Charlene Road until after Mr. Myers's accident in the early morning hours of December 16, 2011, as shown by the DOTD affidavit and the attached Work Request Report # 5845, received on December 16, 2010, at 3:00 a.m. As previously stated, the deputy responsible for patrolling the area around the intersection two and three times per week, stated in his deposition testimony that he never noticed anything wrong with the stop sign at that intersection.

Based on our de novo review of the record, we conclude DOTD did not receive actual or constructive notice of the defect in the stop sign at the intersection of Charlene Road and Prudhomme Road (Louisiana Highway 95) prior to Mr. Myer's accident on December 16, 2011 as required by La.R.S. 9:2800(D). *See Hunter*, 177 So.3d 815; *Fisher*, 165 So.3d 321.

Thus, Mr. Myers will be unable to sustain his evidentiary burden at trial, and we affirm the trial court's ruling granting summary judgment in favor of DOTD, as the ruling was adequately supported by the summary judgment evidence properly submitted in support thereof. The general statements in the opposing affidavit of Mr. Miller were not sufficient to create a genuine issue of material fact at trial. Having so found, we pretermit a ruling on the admissibility of the affidavit.

*Inadequate Time to Conduct Discovery*

Mr. Myers also contends that summary judgment is premature and that he requires additional time for discovery "to clarify an element in the case." However, despite mentioning the issue of prematurity and the need for additional discovery

in his opposition to the motions for summary judgment filed by DOTD and APPJ, the record does not reflect that Mr. Myers filed a motion with the trial court seeking a continuance of the hearing on the motions for summary judgment in order to conduct additional discovery. We note that the hearing on the motions for summary judgment took place more than four years after the accident, presumably more than sufficient time to conduct discovery.

Further, the transcript of the hearing on January 12, 2015, does not contain any request by Mr. Myers for additional time to conduct discovery. Therefore, we need not consider his argument on that issue pursuant to Uniform Rules—Courts of Appeal, Rule 1–3, which provides in pertinent part: "The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice so requires." Finding no "interest of justice" requirement under the facts of this case, we decline to further review the merits of this issue.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment granting the motions for summary judgment of the Acadia Parish Police Jury and the State of Louisiana, through the Department of Transportation and Development, dismissing Ronnie Myers's petition with prejudice at his cost. All costs of this appeal are assessed to appellant Ronnie Myers.

**AFFIRMED.**